UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JOANN B., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:25-CV-35-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| FRANK BISIGNANO, *Commissioner of* | ) | **ORDER** |
| *Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on a Motion for Summary Judgment, [R. 12], filed by Claimant Joann B. (hereinafter, "Plaintiff"). Therein, Plaintiff seeks review of the Commissioner's decision upholding the Administrative Law Judge's (hereinafter, "ALJ's") denial of her claim for benefits. In response, the Commissioner argued that "[t]he administrative law judge (ALJ) properly evaluated the objective medical evidence and medical opinions, and correctly determined that Plaintiff could perform her past relevant work." [R. 13, p. 1]. For the reasons that follow, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. The Court will therefore affirm the Commissioner's decision.

## I. BACKGROUND

On December 30, 2021, Plaintiff protectively filed an application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3) (hereinafter, the "Act") and Supplemental Security Income ("SSI") benefits under Title XVI of the Act. [R. 8 (Administrative Record) (hereinafter "Administrative Transcript" or "Tr."), pp. 37, 234–235, 241–

248].[1] She alleged disability beginning on December 19, 2018,[2] due to "lumbar spondylosis; neuropathy; venous insufficiency/peripheral vascular disease; plantar fasciitis; obesity; cardiomegaly; hypertension; and hypothyroidism," "sinusitis, urinary incontinence, hyperopia and presbyopia," and "adjustment disorder, anxiety, major depressive disorder, bipolar affective disorder, and post-traumatic stress disorder." *Id.* at 40. Plaintiff's application was denied initially, *id.* at 133–141, and upon reconsideration. *Id.* at 145–151. At Plaintiff's request, a hearing was held on January 24, 2024, before ALJ Eric Fulcher. *Id.* at 59–83. The ALJ issued an unfavorable decision on February 27, 2024. *Id.* at 37–49. The Appeals Council did not review the decision, making the ALJ's decision final. *Id.* at 1–4.

In making his determination, ALJ Fulcher applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim. 20 C.F.R. § 404.1520; *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). In summary, the evaluation process proceeds as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.
3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.
4. Does the claimant have the Residual Functional Capacity (hereinafter, "RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

---

[1] The Court uses the numbering system from the Court Transcript Index found in the Administrative Record.
[2] After Plaintiff filed her appeal before this Court, she amended her alleged disability onset date to December 30, 2021. *Cf.* [Tr. 37, Tr. 64].

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Jordan*, 548 F.3d at 423; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

First, ALJ Fulcher found that Plaintiff "meets the insured status requirements of the Social Security Act through March 31, 2024," [Tr. p. 39], and did not engage in substantial gainful activity at any point since December 30, 2021, Plaintiff's alleged onset date. *Id.* at 39–40. Second, he found that Plaintiff has the severe impairments of "lumbar spondylosis; neuropathy; venous insufficiency/peripheral vascular disease; plantar fasciitis; obesity; cardiomegaly; hypertension; and hypothyroidism." *Id.* at 40. However, he found that Plaintiff's other impairments were non-severe, including both her physical impairments of "sinusitis, urinary incontinence, hyperopia and presbyopia," and her mental impairments of "adjustment disorder, anxiety, major depressive disorder, bipolar affective disorder, and post-traumatic stress disorder." *Id.* Third, ALJ Fulcher found that none of Plaintiff's impairments or combination of impairments meet or medically equal the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *Id.* at 41.

ALJ Fulcher then determined that Plaintiff has the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

[T]he claimant can stand and/or walk in any combination for 4 hours total out of an 8-hour workday. The claimant can operate foot controls frequently bilaterally. She

can occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds. The claimant can frequently balance. She can occasionally stoop, kneel, and crouch. The claimant can never crawl. The claimant can have occasional exposure to unprotected heights, moving mechanical parts, extreme cold, extreme heat and vibration.

*Id.* at 42. Fourth, ALJ Fulcher found that Plaintiff "can perform her past relevant work" as a cashier as that work is generally performed in the national economy. *Id.* at 48–49. Based on this evaluation, ALJ Fulcher concluded that Plaintiff was not disabled, as defined in the Social Security Act, at any point since her alleged onset date through the date she was last insured. *Id.* at 49.

Plaintiff sought administrative review of the decision, and the Appeals Council declined review on February 3, 2025. *Id.* at 1–7. At that point, ALJ Fulcher's decision became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court on February 27, 2025. [R. 1].

## II.    LEGAL STANDARD

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## III.    ANALYSIS

Petitioner challenges several findings in ALJ Fulcher's decision. First, Plaintiff alleges ALJ Fulcher erred by failing to properly consider her psychological impairments. Second, Plaintiff claims ALJ Fulcher erred in determining her RFC by failing to properly consider her age and the medical opinions of Dr. Dye, her treating physician, and Dr. Rigby, a state psychiatric consultative examiner. Third, Plaintiff asserts ALJ Fulcher erred in his determination of Plaintiff's ability to perform past relevant work. In response, the Commissioner argues that Plaintiff has not carried her burden to put forward evidence showing that the ALJ erred in his determination since there is substantial evidence to support the ALJ's findings at each step. [R. 14, pp. 3–9]. Claimant did not file a reply.

### A.  Psychological Impairments

Plaintiff argues that ALJ Fulcher "completely disregarded the Claimant's psychological impairments" by concluding that her "medically determinable mental impairments of adjustment disorder, anxiety, major depressive disorder, bipolar affective disorder and PTSD considered singularly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." [R. 12-1, p. 9; Tr. p. 40]. Plaintiff claims that ALJ Fulcher's "decision to completely disregard these impairments as [non-]severe is unsupported in the record" and his "attempt to deminimize [sic] these problems in the decision is in affect [sic] the ALJ acting as his own medical expert as to whether these conditions effect [sic] her ability to work." [R. 12-1, p. 9].

At step two of the ALJ's analysis, the ALJ considers "whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death."

- 5 -

SSR 16-3P, 2017 WL 5180304, at *11 (Oct. 25, 2017). Further, "[a] severe impairment is one that affects an individual's ability to perform basic work-related activities for an adult." *Id.* Only if the ALJ determines that one or more of a claimant's impairments is severe does the ALJ move on to step three of the evaluation. *Id.*; *see Floyd v. Comm'r of Soc. Sec.*, No. 23-2036, 2024 WL 3103757, at *2 (6th Cir. 2024). "The Sixth Circuit has found it legally irrelevant that some of a claimant's impairments are found non-severe, when other impairments are found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and the ALJ should consider both the severe and non-severe impairments in the remaining steps." *Lane v. Kijakazi*, No. 6:22-CV-187-KKC, 2024 WL 643134, at *3 (E.D. Ky. Feb. 15, 2024) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)) (internal citations omitted). In other words, "[a court] will not reverse" an ALJ's finding that some of a claimant's impairments were severe and other impairments were not, so long as the ALJ has considered the impairments using the record evidence during her analysis. *Floyd*, 2024 WL 3103757, at *2 ("[A]gency rules require the ALJ to consider even non-severe impairments in the remaining analysis.").

Here, it is clear that ALJ Fulcher considered Plaintiff's non-severe impairments in his analysis, and there is substantial evidence to support the ALJ's finding that Claimant's numerous psychological conditions were not severe impairments. ALJ Fulcher considered the objective medical evidence regarding her psychological conditions. *See* [Tr. pp. 47–48, 93, 101, 110, 119, 289–92, 352–54, 736, 1116, 1119, 1655, 2165, 2172, 2185, 2192]. In doing so, the ALJ cites to multiple records indicating that Plaintiff was capable of caring for her own home, "including the shopping needs and chores around the house," she "socializes with friends and family somewhat regularly" and attends church weekly, and she enjoys reading as a hobby. *See* [Tr. pp. 40–41]. When evaluating this evidence, ALJ Fulcher determined that Plaintiff's psychological

impairments were not severe because they "cause no more than 'mild' limitation in any of the functional areas" set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1). [Tr. p. 41]. The ALJ added that the RFC finding reflected the degree of limitation found in the paragraph B analysis and as reflected in the medical history. [Tr. p. 41].

Diagnoses alone are not enough to establish that an impairment is severe. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." (internal citation omitted)). So, the mere fact that Plaintiff was diagnosed with psychological conditions did not require ALJ Fulcher to find that they were severe if other evidence in the record indicates as such. *See id.* Here, the findings of state agency psychologists and consultative examiners Dr. Rigby and Ms. Freel corroborated ALJ Fulcher's determination, since they found Plaintiff had no limitations or only mild limitations in their assessments. [Tr. pp. 735–37, 1658–59]; *see also* [Tr. 93, 101, 110, 119 (psychological examinations of Dr. Stevens-Watkins and Dr. Vandivier, finding the same)]. As ALJ Fulcher noted the opinions of Dr. Rigby and Ms. Freel were also consistent with the conservative mental health treatment that Plaintiff received, specifically her lack of medication for her psychological issues and her largely normal mental examination findings [Tr. pp. 47–49 (citing [Tr. pp. 1116, 1119, 2165, 2172, 2185, 2192]). Taken together, ALJ Fulcher relied on substantial evidence in determining that Plaintiff's psychological impairments were not severe.

Moreover, as the Commissioner notes, *see* [R. 14, pp. 6–7], an ALJ properly evaluates a claimant's non-severe medical impairments where, "[a]fter concluding that [the claimant's] mental impairments [are] no more than mild, the ALJ explicitly state[s] that [the claimant's] 'residual functional capacity assessment used at steps 4 and 5' later in his decision reflected the 'degree of

limitation' that the ALJ had found in the 'mental function analysis.'" *See Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025). Here, ALJ Fulcher did as such, stating that his "residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." [Tr. p. 41]. Accordingly, the Court here finds no error in ALJ Fulcher's determination as to Plaintiff's mental impairments, and finds that he relied on substantial evidence that was sufficient to reach his determination.

**B. RFC Determination**

The RFC finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases their RFC finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant bears the burden of proof when establishing that he or she lacks the RFC to continue their past relevant work. *Walters*, 127 F.3d at 529.

Plaintiff makes multiple arguments related to ALJ Fulcher's RFC determination. Specifically, she asserts that ALJ Fulcher failed to consider two pieces of evidence in making his RFC finding: Plaintiff's age and the medical opinions of two doctors, Dr. Gregory Dye and Dr. William Rigby. The Court will consider each of Plaintiff's claims in turn.

1. Failure to Consider Plaintiff's Age

Plaintiff argues that ALJ Fulcher "failed to address the Claimant's age" in determining her ability to other work. [R. 12-1, p. 9]. According to Plaintiff, "the requirements to prove disability lessen" as a claimant ages, yet ALJ Fulcher "did not ever look at [age-related] grid rules in making a decision that she was not disabled." *Id.* at 10.

However, age is not a relevant factor until step five, when the Court considers whether a claimant can adjust to other work. *See* 20 C.F.R. § 404.1520(a)(4)(v) ("At the *fifth and last step*, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work."). Even though, as Plaintiff argues, her age would have been relevant at step five, ALJ Fulcher here appropriately determined that Plaintiff could return to her past relevant work at step four, *see infra* Section III(C), meaning that the inquiry into whether Plaintiff was disabled stopped there. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In other words, whether Plaintiff would have been found disabled at step five (where age is considered) is irrelevant because the ALJ properly concluded the inquiry after determining at step four that Plaintiff was not disabled.

Taken together, the Court finds no error in ALJ Fulcher's failure to consider Plaintiff's age in his determination of Plaintiff's RFC.

### 2. Failure to Consider Medical Opinions of Dr. Dye and Dr. Rigby

Secondly, Plaintiff argues that ALJ Fulcher "failed to properly assess the finding of Dr. Dye in determining the Claimant's RFC" and "did not [properly] support the decision to disregard Dr. Dye and Dr. Rigby's opinions" by considering the supportability and consistency of their opinions. [R. 12-1, pp. 10–11]. Plaintiff takes particular issue with the ALJ's disregard of Dr. Rigby's opinion, claiming that Dr. Rigby "was the only person who evaluated [Plaintiff's] mental impairments." *Id.* at 11. Additionally, Plaintiff claims the ALJ "did not adequately address the opinions of . . . the other treating physicians and the objective medical testing." *Id.* In response, the Commissioner asserts that (1) ALJ Fulcher found Dr. Dye's opinion was not fully persuasive due to inconsistencies between his opinion and his treatment notes and records, as well as the mostly normal findings throughout Plaintiff's medical history, (2) ALJ Fulcher in fact found Dr.

Rigby's opinion persuasive and considered supportability and consistency in doing so, and (3) that Plaintiff fails to identify with sufficient detail the evidence the ALJ allegedly did not consider. [R. 14, pp. 8–9].

In Dr. Dye's "Medical Assessment of Ability to Do Work-Related Activities (Physical)," [Tr. pp. 830–833], Dr. Dye, Plaintiff's treating doctor, found that Plaintiff's cardiomegaly could affect her ability to lift and carry, [Tr. p. 831], that her history of low back pain could affect her ability to stand and walk, *id.*, that she could only stand or walk for two-to-four hours per day and only for thirty minutes without interruption, *id.*, that she had no ability to perform postural activities such as climbing, balancing, stooping, crouching, kneeling, or crawling, *id.* at 832, and that her ability to push and pull were affected by her impairments. *Id.*

In Dr. Rigby's "Mental Status Consultative Examination," [Tr. pp. 730–37], Dr. Rigby diagnosed Plaintiff with Major Depressive Disorder, [Tr. p. 736], determined that her condition was "likely to improve or worsen in correlation with her physical problems and life circumstances." *Id.* Dr. Rigby also found that Plaintiff had no impairment as to her ability to "understand, retain, and follow simple instructions" or to "sustain concentration and persistence to complete tasks in a normal time" and had only mild impairment in her ability to "maintain social interactions with supervisors, friends, and the public" and to "adapt and respond to the pressures of normal day-to-day work activity." *Id.* at 737.

The new regulations for evaluating medical opinions are applicable here since Claimant's claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The previous regulations required a treating physician's opinion be given controlling weight if it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Under the new

regulations, however, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). An administrative law judge must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors" when determining the persuasiveness of an opinion. 20 C.F.R. 404.1520c(c)(1)–(5). But the administrative law judge need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2). "To further illuminate this distinction, supportability relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their own opinion; by contrast, consistency relates to the relationship of a medical source's opinion to other medical opinions and evidence of record." *Marika G. v. O'Malley (Marika I)*, No. 3:24-CV-00105-CRS-RSE, 2024 WL 5465207, at *4 (W.D. Ky. Dec. 20, 2024), *report and recommendation adopted sub nom.*, *Marika G. v. King (Marika II)*, No. 3:24-CV-105-CRS, 2025 WL 384416 (W.D. Ky. Feb. 4, 2025) (citing 20 C.F.R. § 416.920c(c)(1)–(2)). "[T]he measuring stick for an 'adequate discussion' [of these factors] is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 3:21-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022) (citations omitted).

- 11 -

In considering Dr. Dye's opinion, ALJ Fulcher provided the following:

> Gregory Dye, MD completed a medical assessment form in November 2021 (Exhibit 16F). This opinion is not fully persuasive. Dr. Dye opines that the claimant has no ability to perform postural activities, as well as other limitations (Exhibit 16F pg. 3). This opinion is not consistent with the mostly conservative treatment history detailed in Dr. Dye's treatment notes (Exhibit 23F pgs. 73 and 97 thru 100). Also, the limitations on postural activities noted by Dr. Dye are largely inconsistent with the mostly normal findings throughout the treatment records (see Exhibits 42F pgs. 23/27 and 29/32 and Exhibit 44F pgs. 20/22 and 44/46).

[Tr. p. 48].

The Court finds that ALJ Fulcher sufficiently articulated the supportability and consistency of Dr. Dye's opinion and pointed to record evidence supporting his findings. "'A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Wroblesky v. Comm'r of Soc. Sec.*, No. 1:23-CV-232-JEG, 2023 WL 7131807, at *9 (N.D. Ohio Oct. 30, 2023) (quoting *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261-JDG, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020)). This means that the ALJ must "articulate the supportability and consistency of each medical opinion," *Newman v. Kijakazi*, No. 5:22-59-KKC, 2023 WL 2700700, at *2 (E.D. Ky. Mar. 29, 2023) (citations omitted), but he or she "is not required to specifically use the terms supportability or consistency in [the] analysis." *Id.* (internal quotation marks omitted) (quoting *Childers v. Kijakazi*, Civil No. 5:21-285-JMH, 2022 WL 2706150, at *5 (E.D. Ky. July 12, 2022)); *see also Fisk v. O'Malley*, No. 5:23-CV-00261-MAS, 2024 WL 4194307, at *4 (E.D. Ky. Sept. 13, 2024) ("The ALJ describes his consistency findings but does not necessarily use those words. Such specificity or magical incantation of words is not required."). In this case, ALJ Fulcher did not use the word "supportability," but he adequately articulated why Dr. Dye's opinion was not supported by his own treatment notes. ALJ Fulcher explained that Dr. Dye's assessments of Plaintiff's limitations and her ability to perform postural activities were inconsistent with Plaintiff's "mostly

conservative" treatment history detailed in Dr. Dye's own treatment notes, and were "largely inconsistent with the mostly normal findings throughout the treatment records." [Tr. p. 48]. For example, at various times the treatment records describe Plaintiff's back pain as a "moderate" or "discomforting" "ache" relieved by ibuprofen, [Tr. 1045], as "feeling better" approximately one year later, *cf.* [Tr. 1045, 1780], and as "achy," [Tr. 1786] and describe Plaintiff's psychological condition as "within normal limits" regarding her perception, thought content, cognition, insight, and judgment, [Tr. 1901], whereas Dr. Dye's treatment notes state in conclusory fashion and without supporting detail that Plaintiff's "cardiomegaly" and "history of low back pain" prevent her ability to lift, carry, stand, and walk. [Tr. 831]. In other words, because of the discrepancies between the overall record and Dr. Dye's assessment, ALJ Fulcher did not find his medical opinion persuasive. Overall, ALJ Fulcher considered both the supportability and consistency factors and presented her findings when discussing Dr. Dye's medical opinion evidence. As noted above, an ALJ need not explain how he or she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

Having considered his thorough analysis, the Court finds that substantial evidence supports ALJ Fulcher's finding that Dr. Dye's assessment is unpersuasive. ALJ Fulcher complied with the regulations by discussing both the supportability and consistency of the assessment, and he thoroughly considered the objective medical evidence that contradicts Dr. Dye's assessment of Claimant's RFC. [Tr. pp. 1021, 1045–46 (describing Plaintiff's back pain as "relieved by over the counter medication"), 1780–84 (recommending chiropractic manipulation and massage therapy for Plaintiff's back pain), 1786–89 (describing Plaintiff's "mild" and "moderate" pain in her spinal region during a musculoskeletal examination and listing impairment in her ability to perform "household activities, recreational activities, sleep[], and walk[]"), 1900–02 (listing Plaintiff's psychological condition as "within normal limits" regarding her perception, thought content,

cognition, insight, and judgment), 1924–26]. Moreover, it is worth noting that some of Dr. Dye's proposed limitations come in the form of a "check-box analysis" with a few fill-in-the-blank questions, *see* [Tr. 831–32], which administrative law judges may appropriately afford little weight. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (noting that reports, where the physician's only obligation is to check a box or fill in a blank, are generally weak evidence at best); *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (recognizing that an ALJ can properly give check-box forms "little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence"). ALJ Fulcher did not err in finding this assessment unpersuasive since he found it was inconsistent with the medical evidence as a whole.

In considering Dr. Rigby's opinion concerning Plaintiff's psychological limitations, ALJ Fulcher provided the following:

> The claimant's case was examined by the Disability Determination Services (Exhibit 3A, 4A, 5A and 7A). Opinions were admitted by D. Stevens-Watkins, Ph.D. and Dan Vandivier, Ph.D. regarding the claimant's psychological function. Specifically, Dr. Stevens-Watkins and Dr. Vandivier opined that the claimant would have no limitations in understanding, remembering, or applying information, no limitations in interacting with others, a mild limitation in concentrating, persisting or maintaining pace and a mild limitation in adapting or managing herself (Exhibits 3A pg. 4, 4A pg. 4, 5A pg. 5, and 7A pg. 4). These opinions are persuasive, as they are supported by the evidence analysis in these assessments. Further, the opinions are consistent with the findings of Annette Freel, MS and William Rigby, Ph.D., who both examined the claimant for psychological consultative examinations (Exhibits 12F and 35F). Ms. Freel and Dr. Rigby both opined that the claimant would have mild limitations or no limitations in the broad functional areas of mental functioning (Exhibits 12F pg. 8 and Exhibit 35F pg. 9). Finally, the opinions of Dr. Stevens-Watkins and Dr. Vandivier are also consistent with the conservative mental health treatment the claimant has received. It appears from the medical records that the claimant has not required any medications for her psychological issues, and she has not needed extensive/intensive treatment or hospitalization for mental health issues (see Exhibits 25F and 52F). The opinions of the DDS examiners regarding the claimant's psychological function are consistent with and supported by the record, as discussed above.

* * *

William Rigby, Ph.D. and Annette Freel, MS both examined the claimant for psychological consultative examinations (Exhibit 12F and Exhibit 35F). Dr. Rigby's opinion and Ms. Freel's opinion are both persuasive. Their opinions are supported by the exam findings, which mostly reflected normal psychological activity. The findings reached by Ms. Freel are mostly consistent with the findings of Dr. Rigby. Also, the findings within both exams are largely consistent with the level of mental health treatment records in the claimant's file, which show only conservative mental health treatment and largely normal mental exam findings (see Exhibits 25F pgs. 29 & 32 and Exhibit 52F pgs. 2, 9, 22 and 29). As these exams appear to be consistent with each other and the treatment the claimant has received for her mental health, the opinions are persuasive.

[Tr. pp. 47, 48].

In contrast with how Plaintiff characterized the facts, Dr. Rigby was not the only doctor to evaluate Plaintiff's psychological impairments, and ALJ Fulcher, in fact, found Dr. Rigby's evaluation persuasive. *See id.* at 48. Moreover, in reaching that conclusion, ALJ Fulcher considered the supportability and consistency of Dr. Rigby's evaluation. The ALJ found the evaluation was internally consistent because Dr. Rigby's opinion aligned with his examination findings that mostly reflected normal psychological activity. *See id.*; [Tr. 736–37 (describing Plaintiff as "free of major mental illnesses such as psychotic conditions" and finding no impairment in Plaintiff's ability to "understand, retain, and follow simple instructions" or to "sustain concentration and persistence to complete tasks in a normal time")]. And, ALJ Fulcher found the evaluation was also consistent with other evidence of Plaintiff's mental health and corresponding treatment throughout Plaintiff's file, which showed only conservative mental health treatment and largely normal mental examination findings. *See id.* (citing [Tr. pp. 93, 101, 110 (describing Plaintiff's psychological limitations as "not consistent with the evidence in view of the lack of severe symptoms or signs"), 119 (same), 1116, 1119, 2165 (Plaintiff stated she has "more

good days than bad days"), 2172, 2185, 2192]). As noted above, an ALJ need not explain how he or she considered factors other than supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Having considered his thorough analysis, the Court finds that substantial evidence supports ALJ Fulcher's finding that Dr. Rigby's assessment is persuasive, and thus concludes that ALJ Fulcher did not err in finding the assessment persuasive.

Lastly, the Court will address Plaintiff's claim that the ALJ "did not adequately address the opinions of . . . the other treating physicians and the objective medical testing." [R. 12-1, p. 11]. As the Commissioner notes, this single-sentence assertion does not specifically identify what evidence ALJ Fulcher allegedly did not consider, and cites to neither caselaw nor the record. *See* [R. 14, p. 9]. Because Plaintiff's argument is wholly undeveloped, the Court need not consider it further. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–34 (1st Cir. 1995))) (internal quotation marks omitted). Accordingly, the Court rejects this claim by Plaintiff and declines to find that ALJ Fulcher erred on this ground.

### C. Past Relevant Work Determination

The Court next addresses Plaintiff's challenge regarding ALJ Fulcher's determination as to Plaintiff's ability to perform past relevant work in light of her medical conditions. Plaintiff contends that because the ALJ found that her RFC limited her to "light work," she could not perform her prior job as a cashier since her "job was not a sedentary position" and was actually performed at a medium level of exertion. [R. 12-1, p. 6–7]. And, according to Plaintiff, because

"most . . . jobs at a grocery store would not be [sedentary] because of the weight of items that the cashier is required to handle," the ALJ should not have found her capable of performing her past relevant work as a cashier.

As briefly discussed already, *see supra* Section I, at step four of the sequential evaluation process, the ALJ finds a claimant is not disabled if she is capable of performing her past relevant work as it was actually performed *or* as it is generally performed in the national economy. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) (emphasis added). The claimant bears the burden of showing an inability to perform any past relevant work. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Social Security Ruling (hereinafter, "SSR") 82-62 outlines the factors that an ALJ must consider in determining a claimant's ability to perform her past relevant work and provides the following in relevant part:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue clearly and explicitly as circumstances permit.
>
> * * *
>
> A decision that an individual is not disabled, if based on §§ 404.1520(e) and 416.920(e) of the regulations, must contain adequate rationale and findings dealing with all of the first four steps in the sequential evaluation process.
>
> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
>   1. A finding of fact as to the individual's RFC.
>   2. A finding of fact as to the physical and mental demands of the past job/occupation.
>   3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4 (Jan. 1, 1982).[3]

In his decision, ALJ Fulcher made the three specific findings of fact as outlined by SSR

82-62. First, ALJ Fulcher found that Plaintiff had the RFC to perform light work, as defined by 20

C.F.R. §§ 404.1567(b) and 416.967(b), except that she could "stand and/or walk in any

combination for 4 hours total out of an 8-hour workday"; "operate foot controls frequently

bilaterally"; "climb ramps and stairs" but "never climb ladders, ropes, or scaffolds"; "frequently

balance," "occasionally stoop, kneel, and crouch," but "never crawl"; and "can have occasional

exposure to unprotected heights, moving mechanical parts, extreme cold, extreme heat, and

vibration." [Tr. p. 42]. Second, ALJ Fulcher addressed the demands of Plaintiff's previous job as

a cashier, citing to the testimony of the vocational expert at the evidentiary hearing to support the

finding that Plaintiff had performed her specific previous work at a medium level of exertion. *Id.*

at 48. ALJ Fulcher further noted, though, the testimony of the vocational expert that cashier jobs

as generally performed in the national economy only require sedentary work. *See id.* at 48–49, 79,

80–81. In doing so, the ALJ specifically relied on the vocational expert's testimony that classified

Plaintiff's past work as a cashier, DOT #211.362-010; Sedentary, (SVP-5). [Tr. 48–49, 80]; *see* 20

C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("A vocational expert or specialist may offer relevant

evidence within his or her expertise or knowledge concerning the physical and mental demands of

---

[3] Although SSR 24-2P "rescinds and replaces" SRR 82-62, SSR 24-2P only became effective on June 22, 2024. SSR 24-2P, 2024 WL 3291790, at *2 (June 6, 2024). Therein, the Social Security Administration further stated that it would "apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date" and that it "expect[ed] that Federal courts will review [its] final decision using the rules that were in effect at the time [it] issued the decisions." *Id.* at *2 n.1. The Social Security Administration's guidance mirrors that of the Sixth Circuit. *See Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 495 n.4 (6th Cir. 2019) ("The version of the rules in effect in January 2017, when the ALJ rendered her opinion, applies.").

Here, Plaintiff's claim was resolved by the ALJ on February 27, 2024. *See* [Tr. pp. 37–49], meaning her claim was *not* pending before the SSA on June 6, 2024, the date SSR 24-2P became effective. Therefore, SSR 82-62 applies, not SSR 24-2P.

a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."). Third and lastly, the ALJ, considering that Plaintiff's RFC allowed for light work with certain limitations, concluded that Plaintiff "can perform her past relevant work as it is generally performed," and therefore, that she could return to her past work as a cashier. *Id.* at 49.

Although Plaintiff asserts that the ALJ's finding was erroneous precisely because she did not perform her prior job at a sedentary level, a claimant can be found capable of performing her past relevant work if she can either perform the job as actually performed *or* as generally performed in the national economy. SSR 82-61, 1982 WL 31387, at *1-2 (Jan. 1, 1982); *see also Clendening v. Comm'r of Soc. Sec.*, 482 F. App'x 93, 96 (6th Cir. 2012) ("The relevant inquiry is whether [the claimant] could still perform that type of work and not necessarily the specific job that he had in the past." (citing *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987))). In his decision, the ALJ specifically relied on the testimony of the vocational expert during the hearing in Plaintiff's case—which contrasted how Plaintiff had performed her *specific* previous job as a cashier with how that job is generally performed in the national economy—in concluding that Plaintiff "can perform her past relevant work *as it is generally performed*." *Id.* at 49; 80–81 (emphasis added). Plaintiff fails to offer any evidence to rebut the ALJ's determination and instead claims, in a conclusory manner and without citing to any sources, that "most . . . jobs [like Plaintiff's past employment] at a grocery store would not be [sedentary] because of the weight of the items that the cashier is required to handle." [R. 12-1, p. 7]. Because Plaintiff points to no evidence demonstrating any error in the ALJ's step four finding, the Court finds her argument unpersuasive.

- 19 -

Very briefly—in only a single sentence—Plaintiff also appears to claim that the ALJ should have considered her age as part of his past relevant work determination. *See* [R. 12-1, p. 7 ("The Claimant is an individual of 'closely approaching retirement age' at the time of her onset of disability.)]. The Court previously addressed a similar argument made by Plaintiff as to another aspect of the ALJ's analysis. *See supra* Section III(B)(1). The Court's reasoning there—that age is not considered at that stage of the ALJ's analysis—likewise applies here at step four. *See* 20 C.F.R. § 404.1520(a)(4)(v) ("At the *fifth and last step*, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.").

Taken together, Plaintiff fails to demonstrate any error in the ALJ's finding, as ALJ Fulcher sufficiently addressed Plaintiff's ability to perform past relevant work as it is generally performed in the national economy, and his decision is supported by substantial evidence.

As a closing note, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993). While there might be evidence in the record that could support conclusions contrary to those reached by ALJ Fulcher, it is clear that ALJ Fulcher thoroughly considered all evidence of record, and the Court finds no error in his decision.

## IV.    CONCLUSION

For the above-stated reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable law and regulations. **IT IS HEREBY ORDERED** as follows:

1.    The final decision of the Commissioner is **AFFIRMED**.

2.    A separate Judgment will be entered consistent with this Order.

This the 26th day of January, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY